Case number 14-2183, United States v. Carlos Javier Maymi-Maysonet Thank you Good morning counsel. First I'd like to reserve two minutes for rebuttal. Well actually first I'd like to excuse myself for being late. They closed off a major artery and there was a major detour and I was among 50,000 who were actually about. Okay, fine. Your excuses are accepted. Thank you, Your Honor. This case, basically, this case consists of a sting operation by the government where a confidential informant was utilized and to make a long story short, the government, as trial was approaching, due to certain problems which arose during pre-trial proceedings about the qualifications of the CI, decided not to use the CI, confidential informant, as a witness as it had originally planned during trial. As a result of this, it is the appellant's position that insufficient evidence was presented and the two charges to which the defendant was accused, that is a conspiracy to distribute drugs and an aiding and abetting to possess, were not, the evidence was insufficient to establish that those offenses were committed when viewed, when the case is viewed most favorably to the government. Can you tell me your version of the facts as to the incident of a red car leaving and coming back and your client, if at all? Yes, Your Honor. The situation with the red car was that the appellant is seen entering the parking lot. Okay, a minute later, a red car leaves that parking lot. The person who is surveying, surveilling the red car cannot see the number of passengers in the red car. The red car leaves and about 17 or 18 minutes later returns. When the red car returns, it enters into the hotel and it parks in the lobby. Again, the person who was in charge of surveillance did not know how many passengers were in that red car. When the arrest signal is given, there are three people in the red car that is parked in the hotel. One of the agents, the agent in charge, which was Agent Bybee, was under the impression that the arrest that was to be executed was to take place in front or in the lobby of the hotel. And later on, he's directed to the red car. That red car, Agent Bybee, had no knowledge at that time that it was involved in the conspiracy. But most interesting is that there were three people in that red car. One of them was the appellant. Now, before you go any further, up to that point, was the red car, when it came back, under continuous surveillance? No, Your Honor. The red car was seen entering the hotel parking lot. And did they stop surveilling the red car at that point? Yes, it is my impression. There was no evidence at all, according to you. Excuse me? What does the record show, according to you? Okay, the record shows that there was no evidence at all indicating that that red car remained under surveillance. None whatsoever. In fact, that red car, there were three people in it. Of the three people arrested, two of the people were later released because, according to the case agent, the U.S. Attorney's Office had informed him that there was insufficient evidence to process them. One of them had $10,000 on them? The one who had $10,000 was the appellant. He had $10,500 on him. But it must be noted that that $10,500 that was on him was seized, and he later claimed that money, and that money was returned to him. Which, therefore, it's reasonable to conclude that it was not obtained illegally, or at least on the basis that it would be a half and half, and that would be in favor of the appellant, because if they're equally possible, the possibilities, then there must exist reasonable doubt. Is this the case? I want to make sure that I'm not confusing the facts with other cases. Was there a cockfighting rink nearby? Yes, Your Honor. Was there any evidence that your client went in or out of that cockfighting rink? The evidence that exists is that the client entered that cockfighting area. Now, that cockfighting area is adjacent to the hotel grounds, and it is accessible. It's adjacent. It's the next thing nearby. Now, the interesting thing is, is that at no time after the appellant separates from the other two individuals and goes into the cockfighting area, is the appellant in any way seen with or talking with or in any way interchanging with any of the other co-defendants, the two other co-defendants. But he had lunch with them. Well, you see, he had lunch with them. The evidence really does not indicate who he had lunch with, but even assuming that if they had eaten lunch, that would be a classical mere presence. I mean, there was no evidence at all that during lunch anything was discussed regarding drugs. There's a photograph showing a black bag. Yes, Your Honor. Being taken from the car? No, Your Honor. That, I guess, might be one of the most crucial things here. Nobody knows where that black bag was. There was no testimony at all. No, no, no. The photograph showing the bag. The photograph showing the bag, that bag was occupied from one of the co-defendants in his possession. There is absolutely no evidence at all. Is the car, is the red car in the picture that shows the black bag? Well, after they... I think it's Exhibit 47. There's this exhibit that shows, it's a photograph that depicts a black bag. It's hard to see, but I guess at trial you conceded that there was a black bag in that picture. Yes, there was a black bag in that picture. Is the red car visible in that picture, too? Right now, I would imagine it could be, yes, because after all the pictures were taken, everything, pictures of everything was taken, including that red car, which was not confiscated. No, no. In the picture showing the black bag, can you see the red car? I imagine you can, yes, sir. Okay. And when is that taken? That's taken... That is taken after. After what? After the arrests are executed and after they're processing all the evidence and making the scene, the crime scene. So there's no picture of the black bag and the red car prior to the arrest? Exactly, Your Honor. There's nothing at all associating the red car with the black bag. So your, again, your account of that picture and its significance is there's a red car, there was a black bag, but we don't have any reason from after the fact picture to suggest that the black bag came from the red car. Exactly, especially when the passenger, one of the passengers and the driver of that red car were released, including the red car. And not only that, there were a number of other things that most notably the government failed to establish that the appellant had knowledge that there were controlled substances involved. So can I just get your account, your client is with the people who supposedly are doing the deal beforehand? Yes, Your Honor. And your client has lunch with those people same day. And your client is in this red car that just happens to be pulling up to the hotel and he's got $10,000. And the argument is there's just nothing that shows there's any connection between him having that money, him having been associated with the other people and the actual transfer of money to do the deal? Is that the idea? Exactly, Your Honor. I should add that having lunch, that was never introduced in evidence that they did have lunch. They were seen together walking from a place that they had lunch, but there was never any evidence of knowledge that a drug transaction was to take place. There was never any evidence of my client at all being in any way involved. In fact, the CI at one point, there's a picture taken with the CI talking to the three individuals, one of which is my client. There was no evidence at all as to what the contents of what they were talking. Again, it was a classic mere presence. And what the government has done is they've piled inference upon inference upon inference and they want to impute knowledge and participation. There is absolutely nothing in the record or in the evidence that was presented that would establish that. Is there any evidence in the record as to why the $10,000? No, there was no evidence except that the government stipulated along with the defense that the $10,500 were returned by Border Patrol or Customs. So your client's present when these people are talking about a drug deal? No, there's no evidence. Your client is present with the co-defendants and the CI? Yes, Your Honor. And there's some discussion? Yes, but there was no evidence as to what that discussion is. I didn't say what the content was. There's some discussion. Your client leaves? Yes, they separate, all three of them. Twenty minutes after that meeting takes place, my client goes into the parking lot and the other two. Your client returns? Yes. And at that point or close to that point, the co-defendants are told that the money is available to do the deal? Well, okay. Is that inaccurate? I guess there was really no evidence to say that the client returned. In fact, there's no evidence which really established that the client left. The car returned? The car returned, but there's no evidence to say that the client was in the car. Whose car was it? It was one of the persons who were released along with the car. But there is evidence to suggest that at the time the car happens to be returning, the people doing the deal are saying the money has now gotten here? Yes, Your Honor. That that's just a coincidence? Well, it's really a coincidence. I mean, according to the evidence, it takes place two minutes after the red car returns and there's absolutely no mention of the vehicle. When they say that the money has arrived. And so it really was not established how that money arrived. And in fact, it was never established that that money was in the car. It was never established that anyone saw someone removing the money or the backpack from the car, the red Suzuki. All in all, this is like, I think it would be a classical case, I think Perez Maldonado, a First Circuit case, which says that initially, at the very least, it must be shown, there must be evidence to show that the person accused at the very least had knowledge that a controlled substance transaction was to take place. That also did not occur here. I mean, they're saying, okay, just because he talked to them, that means he had to know about it because people who are normally planning a drug transaction don't let outsiders in. Well, I think it's isn't it the idea that you're reasoning back? Person who talks to those people happens to show up two minutes prior to people doing the deal saying the money's here and then he happens to have $10,000 on him. No, but then again, we don't know. There was never any evidence that he showed up. There was never any evidence that he left. And this is really what it does establish is a mere presence case. Because there's absolutely no evidence that anything, not even any illegal conduct was discussed. None whatsoever. The CI did not testify. Nobody knows what happened. There was absolutely no drugs related to my client. Thank you. Ms. Schwartz, good morning. Good morning, Your Honors. May it please the Court, my name is Maenen Schwartz and I'm representing the United States. I'd like to begin by responding to counsel's argument regarding mere presence unless Your Honors have any questions remaining about the facts that we should establish first. I believe the case that opposing counsel meant to refer to was Perez Melendez, which is a case involving a man who was hired to drive a truck that contained several reams of paper. And inside those reams of paper were hidden some bags of marijuana and the issue in this case was whether he should have known that there was marijuana inside those reams of paper. The evidence was found insufficient because he could reasonably have believed that he was just driving a truck full of paper. This is very different from that case. There's no reasonable, obvious explanation of what Mr. Mimey, the defendant, could have believed he was doing. Excuse me. Let's start with the beginning. Okay. Which is the conversation between three people of which he is one of the people in the conversation. I believe there were actually four people present, Your Honor. Well, four people. There's a confidential informant who is the person who arranged the transaction. He's the only one that could testify as to what went on in that conversation, is he not? Any of the four could testify as to that. Well, I know, but none of the other ones would. Correct, Your Honor. So he's the only one and he is in the government's control. He did not testify at trial. He is in the, is he, I mean, wasn't he under the government's control? Is there any problem with that? No, Your Honor. The government didn't produce him. That's accurate, but the government has... What kind of inference is that? Well, the government has the right to prove its case by whatever means it thinks will be most effective. Okay, but if they don't, if they have a key piece of evidence and they don't produce it normally, that raises the presumption that the evidence is contrary to that party's position. Your Honor, I would submit that on appeal, where there has been a jury verdict in favor of the government, that all inferences are supposed to be taken in favor of the government. All right. What inference do we have as to what went on at that meeting? Well, we can draw from the fact that all of this happened within a very short period of time. I'd like to emphasize that for Your Honors. The meeting with the confidential informant occurred from 1.37 p.m. to approximately 1.40 p.m. And what does that tell us about the content? Well, it tells us, I think, the jury can be presumed to know that people who are setting up a drug deal are probably talking about the drug deal in the 20 minutes before the deal actually takes place, if they meet to speak for three minutes. That is not an inference. That is pure speculation. We don't have any idea what went on in that conversation. They could be talking about the weather. Let's get out. There's a cloud coming. We're going to get rained. Your Honor, we would submit that it is, in fact, a reasonable inference, just because why would you meet for three minutes to talk about the weather when you are going to complete a drug transaction 20 minutes later? It's certainly possible, but I think the reasonable inference is that they were meeting to discuss the details of the transaction that was imminent. Can you talk about that photograph 47? Is it the government's position that that photograph is taken after the arrest? That is my understanding. It's taken outside the hotel. What's the significance of that photograph, then? Is there any significance to it? I do not believe there's any major significance to that for our case today. So there's nothing that ties the defendant here to the black bag? Circumstantial evidence, Your Honor. What's the circumstantial evidence? What happened is that about 20 minutes after the meeting with the confidential informant, the two co-conspirators and the defendant, who have been still speaking together outside the hotel, split apart. The defendant goes to the adjacent cockfighting ring area and actually enters the parking lot there. Does he go into the cockfighting ring? I believe that the testimony established that he went into the cockfighting parking area. Oh, okay. Yeah, into the parking area. And one minute later, a red Suzuki came out. And the testimony of the surveilling agent who was stationed across the street was that his two co-conspirators followed that red car with their eyes as it drove past. So that's one connection. There's evidence of some connection to the red car there. The two co-conspirators remain outside as though waiting for the next 17 minutes. And when the red car returns and pulls into the hotel where the two co-conspirators have been waiting, they immediately follow the red car into the hotel parking lot. So that's a second connection. Who's in that red car? There is not direct evidence of who is in that red car until 2.35 p.m. That's afterwards. That's only about 15 minutes later. It doesn't make any difference. It's afterwards. It is 15 minutes after the car pulls into the hotel parking lot. That's correct. However, I would point your honors to the fact that there was a surveillance team stationed in front of the hotel. They saw Mr. Maimi go into the cockfighting parking lot. They didn't see him walk back to the hotel. But we know he got back to the hotel. Again, I would argue the reasonable inference is that he was in that car. That's how he got there. Do we know, what do we have about the path of that red car? When does that red car first show up? So it showed up at some point prior to the beginning of the surveillance. It was not ever observed going into the parking lot. Surveillance began that morning at around 1130, I believe. I'm sorry. I didn't mean to interrupt you. No problem. Would you concede that his presence at the three-minute conversation with the C.I.  Okay. I'll take notes. His presence in a red Suzuki, the departure of the vehicle, the return of the vehicle, and his possession of $10,000 in cash, each of them alone are capable of an innocent explanation. Each of them standing alone could not constitute a crime. Correct. Your position is that stringing them together, the jury could infer that he was not a mere bystander to these events. Absolutely. That's your argument. Absolutely. And the law in this circuit is that individual events that may by themselves have no illegal ties, nonetheless together may support a finding of guilt beyond a reasonable doubt. But the government has already excluded one of those chains because they returned the $10,000. They didn't think it was relevant. Your Honor, I submit that there are many possible explanations for why the $10,000 was returned. The evidence of why that happened was not part of the record below. But the government's position is that even – The jury did not know one way or the other. Excuse me? The jury did not know one way or the other whether the money was returned. No. There was simply a stipulation that it was returned. The jury did know that it was returned? Yes. The jury just didn't know why? Yes. That is correct. But our position would be that even if the $10,000 had not been found on the defendant, that the circumstantial evidence introduced at trial was more than sufficient for a reasonable jury to find beyond a reasonable doubt that he was guilty. And in fact, to infer that he was the one who actually went and retrieved the money that made the deal possible. Because if we go back to the red Suzuki, 17 minutes after it left, it returned. The co-conspirators follow that red car in. And the surveillance team, because it's stationary, was not able to see the red car for a certain period of time. There's some, I believe, foliage that blocked their view. But two minutes later, the federal agents setting up the scene get a call that the money is there. And one of the co-conspirators now has a black bag full of money, which he didn't have before. Remember, the two co-conspirators were standing outside the hotel in clear view of the surveillance team. It's obvious they didn't have the black bag then. So, again, I think that's circumstantial evidence that the black bag arrived with the red car with defendant and was the money that was meant to close the transaction. Just remind me, the defendant we know is in the red car as of when? 2.35 p.m. is when he's actually pulled from the backseat of the car and arrested. And when does the car pull up? It returns to the hotel at 2.18 p.m. So at some time in that 17-minute period, he gets in the car. Everyone has to agree. We would argue that he got into the car at the cockfighting arena 17 minutes prior to that. No, I understand that. But there's no way he's in the car when they arrested him. He's in the car at 2.35 p.m., so he has to get into it at some point.  So the plausible inference, which is in favor of the jury verdict, is that he was in that car the whole time and was essential to the transaction. I'd just like to remind your honors, from 1.37 p.m. when they met with the CI to 2.35 when he's arrested, we're talking about an hour here. This is all happening right at the time of the transaction. And it's plausible, and I would say more than just plausible, that he wouldn't have been meeting with the co-conspirators and the CI that close to the transaction if he wasn't importantly involved. If your honors have no other questions, the government will withdraw. Thank you. Did you say something? Yes, I did. Okay. First of all, I'd like to respond to Sister Counsel's position that the defendant was not seen walking from the parking area to the hotel area at any time after he entered the parking area of the cockfighting arena. However, I'd also like to say that similarly and likewise, the government at no time saw how that backpack or how the money got into the co-defendant's hands, and they were also under surveillance. So it would be reasonable to conclude that the same reasons the government didn't see how the money got into the co-defendant's hands could also apply to why the government did not see Mr. Maimi if in fact he returned or did not return to the hotel. Also, I'd like to make a slight distinction as to the Perez-Maldonado case. In the Perez-Maldonado case, where they're saying that the question was whether it was reasonably foreseeable or not that there were drugs inside some packages which were to be delivered, the people that were accused had possession of that truck. Here, at possession of the truck where the drugs were found, here and nowhere can they relate Mr. Maimi to anywhere where the drugs were found. And here the only thing is that Mr. Maimi at no time was associated with what there was no evidence, and to be inferring that just because this and this and this may give rise to that, that does not make it so. I mean, at some point it has to go beyond the reasonable evidence in order to the jury have been able to convict the way it was supposed to. Thank you. Thank you.